[Crim. No. 113.   Second Appellate District.—March 16, 1909.]

# THE PEOPLE, Respondent, v. RUBY CASSELMAN, Appellant.

CRIMINAL LAW—FORGERY—CHANGES OF SEVERAL JUDGES DURING TRIAL —JURISDICTION—PRESUMPTIONS.—Changes in the personnel of several judges presiding at different times during the trial of a defendant accused of forgery do not affect the jurisdiction of the court; and in the absence of any showing to the contrary, it must be presumed upon appeal that such changes were for good reasons, and were not prejudicially erroneous; and it not appearing that defendant objected thereto, she must be presumed to have assented and to have waived any possible error therein.

ID.—EVIDENCE—INTERRUPTION OF RE-EXAMINATION OF WITNESS—OFFER OF PROOF NOT MADE—PREJUDICIAL ERROR NOT SHOWN.—Where, after full examination of a witness for the defendant, and cross-examination thereof by the prosecution, and re-examination was resumed, the court interrupted it, and dismissed the witness, though the manner in which the ruling was made was indicative of impatience, yet when defendant made no further offer of proof, it cannot be said that error is made affirmatively to appear, or that the substantial rights of the defendant were prejudiced by the ruling.

ID.—RIDICULE OF IRRELEVANT EVIDENCE—DEFENDANT'S RIGHTS NOT PREJUDICED.—A remark of the court expressing ridicule of irrelevant evidence offered by defendant's counsel, which was made with unnecessary emphasis, did not prejudice the substantial rights of the defendant.

ID.—DEGREE OF COURTESY BETWEEN COURT AND COUNSEL—JUDICIAL REVIEW.—The degree of courtesy between the court and counsel is not the subject of judicial review, unless it clearly appears that defendant's case is prejudiced thereby.

ID.—CROSS-EXAMINATION OF FOSTER FATHER OF DEFENDANT—MODE IN WHICH DEFENDANT MADE MONEY—REMARKS OF COURT—ANSWER NOT PREJUDICIAL.—When, on cross-examination of defendant's foster father, he was asked "how defendant made her money," and in overruling objection thereto, the court remarked, "I think that, being her foster father, he would be apt to know as much about it as anybody," such remark might well be calculated to influence the jury as to the weight of the evidence, and might be deemed prejudicial if the answer were adverse; but when the answer was favorable to the defendant, her rights could not have been prejudiced by the question so allowed.

ID.—FORMER PLEA OF GUILTY OF FORGERY—EVIDENCE—LETTER OF DISTRICT ATTORNEY—PROBATION OF DEFENDANT—CORRECT EXCLUSION.

When a letter written by the district attorney to an expert in handwriting was offered for the defendant to prove a former plea of guilty of forgery stated therein, and the defendant was asked how she came to be on probation, to which she answered, "because I pleaded guilty," and the district attorney disclaimed any intention to claim the former conviction, the court properly excluded the evidence as foreign to the case.

ID.—LETTER IN PURSE OF DEFENDANT—TESTIMONY FOR STATE—CONFLICT—REBUTTAL.—Where a witness for the state had testified positively to finding a letter proved in defendant's purse; and a witness for the defendant had testified as to all the articles found in the purse, which did not include the letter, the court properly refused such conflicting witness to repeat her testimony in rebuttal, or to state where she last saw the letter.

ID.—INSTRUCTIONS GIVEN AT DEFENDANT'S REQUEST—ERROR NOT ASSIGNABLE.—The defendant cannot assign any error in instructions given at the defendant's request.

ID.—BURDEN UPON DEFENDANT TO SHOW ERROR AFFIRMATIVELY.—The burden is upon the defendant to show error affirmatively, and to show affirmatively that an instruction upon which error is assigned was not given at the defendant's request.

ID.—IDENTIFICATION OF INSTRUCTIONS REQUESTED BY DEFENDANT.—When the instructions requested by the defendant were embodied in one document, and the instructions "given" or "modified" were fully identified as such by indorsement and modification made, and signature, and those refused were indorsed "stricken out," without the judge's signature, they are all sufficiently identified by the judge as required in section 1127 of the Penal Code.

ID.—LIMITING TESTIMONY AS TO CHARACTER OF WITNESS—DISCRETION—WAIVER OF OBJECTION.—The court had discretion to limit the number of witnesses called to impeach or sustain the character of a witness for the prosecution to seven witnesses on each side. If the defendant deemed such order prejudicial after introducing three witnesses, the facts showing such prejudice should have been presented to the court, otherwise any objection to the limiting order is deemed waived.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Curtis D. Wilbur, Judge rendering judgment and order; B. N. Smith, Judge acting at trial and instructing jury. Other judges acted as stated in the opinion of the court, which also states further facts in the case.

Earl Rogers, and W. H. Dehm, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Upon trial in the superior court of Los Angeles county the defendant was convicted of the crime of forgery. She prosecutes this appeal from the judgment rendered upon such conviction, and also from an order of court denying her motion for a new trial.

The forged document was a check purporting to be drawn upon, and by the defendant presented for payment to, the First National Bank of Los Angeles. The trial commenced on April 16, 1908, before the late Hon. B. N. Smith presiding as judge. On April 18, 1908, Hon. Walter Bordwell, presiding as judge, the trial of the case was by consent of all parties continued to April 22, 1908, on which last-mentioned date the trial proceeded before Judge Smith as judge presiding until April 25, 1908, when Judge Bordwell sat as presiding judge, on which occasion the closing arguments were made and the case submitted to the jury, which brought in a verdict of guilty as charged. On April 29, 1908, before Hon. W. P. James presiding as judge, H. H. Appel was associated with counsel for defendant, and the passing of sentence was continued to May 9, 1908, and on said last-mentioned date again continued, at defendant's request, to May 23, 1908, at which time Hon. Curtis D. Wilbur, judge presiding, another firm of attorneys were, on defendant's motion, associated with her counsel, and a stipulation made that the reporter's transcript of the testimony should be used on motion for a new trial as a correct statement thereof, as well as of the rulings of the court and exceptions taken thereto. On May 29, 1908, Judge Wilbur presiding, defendant's motion for a new trial came on for hearing, at which time some of defendant's counsel proceeded to present said motion, when other of defendant's counsel stated to the court that they did not desire to participate in said motion for a new trial; whereupon the judge presiding asked defendant whom she desired to represent her in the proceeding. Defendant in open court stated that she did not wish the attorney who was presenting the motion to represent her, and had requested that he not appear

again in her behalf, but that she did desire Messrs. Variel
& Barber, who had theretofore been associated as her counsel
and who were then in court, to represent her interest. The
court then stated to her former counsel that he was dis-
charged; whereupon her attorney, Mr. Variel, stated that
defendant did not desire to present her motion for a new
trial, and thereupon the court denied said motion. On June
19, 1908, the defendant's application for probation thereto-
fore made was denied, the judgment of the court being that
defendant be punished by imprisonment for a term of seven
years. On June 29, 1908, the Hon. W. H. Jamison presiding
as judge, a substitution of attorneys was had, whereby Mr.
Earl Rogers was substituted as attorney for defendant, at
which time notice of appeal was filed and thirty days' time
granted to defendant within which to present her proposed
bill of exceptions. Thereafter a bill of exceptions was, by
the Hon. W. H. Jamison, as judge, duly settled and allowed.

While appellant does not attempt to point out or designate
any particular step in the proceedings, the history of which
we have set forth, as constituting error, her counsel, never-
theless, claim the result of these several judges presiding at
different stages of the trial was in itself prejudicial to defend-
ant. Such change in the bench did not change the court
which undoubtedly had jurisdiction of the case. In the ab-
sence of any showing to the contrary, we must presume that
this change in its personnel was for good and sufficient rea-
sons. Upon like grounds we must presume that defendant
assented to such change. Hence, not having objected, even
if there was error, and upon the record we are unable to per-
ceive any, she is presumed to have waived the same. The
cases of *People* v. *Hobson,* 17 Cal. 429, and *People* v. *Hender-
son,* 28 Cal. 465, furnish authority for holding that the pro-
ceedings, though unusual, were free from prejudicial error.

Referring now to the specific assignment of errors upon
which appellant contends for reversal: After a witness for
defendant had been cross-examined counsel for defendant
proceeded in redirect examination as follows: "Q. I will ask
you, Mrs. Davis— The Court: No, Mr. Brown, please don't.
That is all, Mrs. Davis." Whereupon the witness left the
stand. Inasmuch, however, as no offer was made to prove
any fact in issue, we cannot say that defendant's rights were
prejudiced by the action of the court. The manner in which

the ruling is made is indicative of impatience on the part of the court, but such fact does not excuse counsel, if he regarded the matter of sufficient importance, from submitting a formal statement or offer of what he desired to prove. Such procedure, if taken and disclosed by the record, would comply with the rule that errors must be made to affirmatively appear and also enable this court to determine whether or not the substantial rights of defendant were prejudiced thereby. (*People* v. *Brotherton,* 47 Cal. 388, 404; *In re Eschrich,* 85 Cal. 98, [24 Pac. 634].)

There is nothing in the point that the rights of appellant were prejudiced by a remark of the court, made in the presence of the jury, and calculated to subject defendant's counsel to ridicule. The remark of the court was in response to proffered testimony by defendant which the court with perhaps unnecessary emphasis held to be wholly irrelevant. The degree of courtesy to be exercised between court and counsel is not a subject for judicial review, unless it clearly appears that defendant's case is prejudiced thereby. In *People* v. *Oliveria,* 127 Cal. 382, [59 Pac. 772], the record discloses a much greater violation of the rule of conduct which ordinarily prevails between the court and an attorney engaged in the trial of a cause, yet the court there held it was not reversible error. To the same point see *People* v. *Modina,* 146 Cal. 142, [79 Pac. 842].

On cross-examination the foster father of defendant was asked the question as to how defendant made her money, and in ruling upon defendant's objection to the question the court said: "I think this being the foster father, he would be apt to know as much about it as anybody." The effect of such statement might well be calculated to influence the jury as to the weight otherwise accorded to the answer of the witness; and, if adverse to defendant, might be regarded as prejudicial. In view of the fact, however, that the answer, in so far as it concerned defendant, was favorable rather than otherwise, her rights could not have been prejudiced by the question.

It appears that defendant had on a former occasion pleaded guilty to the crime of forgery, the only evidence tending to prove such fact being that contained in a letter written by the district attorney to an expert in handwriting. Defendant introduced this letter in evidence. The district attorney made no reference to this former conviction and disclaimed

any intention of doing so. Under these circumstances, and in the absence of any evidence that defendant was then on probation, or any evidence of her former conviction other than that contained in the district attorney's letter introduced by herself, she was asked how she came to be on probation, to which she answered: "Because I pleaded guilty to a charge." Whereupon the court interrupted, saying: "That is foreign to this proposition entirely." We think this ruling, in view of the position taken by the district attorney as to her former conviction, clearly correct. A different case might have been presented if the district attorney had sought to impeach her testimony, or make any point against her by reason of such former conviction.

It is urged that the court erred in refusing to permit the witness Davis to testify in rebuttal with reference to a certain letter, which the witness McNamara on the part of the state had testified he found in defendant's purse. Davis had already testified in minute detail as to the articles which were in the purse when she saw it. While her attention was not directed to this particular letter, the list of articles named as having been found by her did not include this letter. The question in issue was whether the letter was in the purse, as to which fact the testimony of Davis and McNamara was conflicting. To permit Davis to repeat her testimony that it was not in the purse, or say, as suggested by defendant's counsel, where she had last seen it, could not strengthen her testimony touching this fact.

Appellant contends that instruction No. 16 is erroneous. This instruction is the last of a number of instructions which appear from the indorsements and filing marks to have been embodied in one document. There is no indorsement indicating at whose request this instruction was given. It does appear, however, from the bill of exceptions that certain instructions proposed by defendant were stricken out in pencil from the face of the document containing all of defendant's proposed instructions. The instructions thus shown by the bill of exceptions to have been stricken out are identical with those numbered 6, 8, 9 and 10 of the document above referred to, of which instruction No. 16 constitutes the last. While we think it devolves upon defendant to affirmatively show that this instruction was not given at her request, it thus clearly appears that it was one among

others requested by her, and therefore, if error, she is in no position to complain. (*People* v. *Rangod,* 112 Cal. 669, [44 Pac. 1071].)

The court failed to give certain instructions contained in the charge requested by defendant, and she contends that the court failed to indorse and sign the instructions so refused, as required by section 1127 of the Penal Code. As hereinbefore stated, the instructions requested by defendant were embodied in one instrument and numbered from 1 to 16, both inclusive. This instrument constituted the charge requested by defendant. Underneath each of said instructions, other than those numbered 6, 8, 9 and 10, was written "Given, B. N. Smith, Judge"; and immediately following the instructions refused, that is, upon numbers 6, 8, 9 and 10, is written the words, with appropriate number in each case, "Stricken out by the court." Where changes are made they are indicated by writing underneath such numbered paragraph, "words in italics supplied by the court." It thus clearly appears that the charge, which consists of the several instructions embodied therein, was in part given and in part refused, and that the court did by indorsement clearly distinguish what part was given and what part was refused, as required by section 1127.

Where the charge requested consists of a number of instructions embodied in one instrument and the judge indorses a part as "given," together with his signature thereto, and indorses another part as "stricken out by the court," without his signature, it is a sufficient compliance with the law in this regard.

It appears from the bill of exceptions that certain instructions identical with those numbered 6, 8, 9 and 10 "were stricken out in pencil from the face of the document containing all of the proposed instructions handed in by defendant, and those which were actually given by the court were indorsed, 'Given, B. N. Smith, Judge.'" As the contrary is not shown, we must assume the words, "stricken out by the court," indorsed under instructions numbered 6, 8, 9 and 10, to have been written by the court, though, in our judgment, had the court's action been indicated by erasure only as shown by the bill of exceptions, it would have sufficiently distinguished the part of the charge refused and fully enabled defendant to reap any benefit inuring to her by reason

of such act. In either view of the case, the action of the court in refusing these instructions is sufficiently indicated.

Upon the question of the character of a witness called upon behalf of the prosecution, and after defendant had examined three witnesses touching the subject, the court stated that, upon such point, each side would be limited to the testimony of seven witnesses. The rule is well settled that the number of witnesses who may be called upon a single question rests in the discretion of the court. (*Butler* v. *State,* 97 Ind. 378; 8 Am. & Eng. Ency. of Law, 469.) Fixing the number in this case at seven on each side was not an unreasonable limitation. If the substantial rights of defendant were prejudiced by reason of the court announcing the number permitted to testify *after* she had placed three witnesses upon the stand, such fact showing how she was prejudiced by the ruling should at the time have been presented to the court; otherwise, even if error, it is deemed to be waived.

A careful consideration of the case satisfies us there is no prejudicial error which upon the record justifies a reversal.

The judgment and order are affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1909.