[Crim. No. 409. Fourth Appellate District.—January 19, 1937.]

THE PEOPLE, Respondent, v. FRED CHILCOTT, Appellant.

Edward J. Kelly and Marie M. Herney for Appellant.

U. S. Webb, Attorney-General, Eugene M. Elson, Deputy Attorney-General, and Thomas Whelan, District Attorney, for Respondent.

JENNINGS, J.—The defendant was accused by information with having committed the crime of murder. On arraignment he entered a plea of not guilty and was tried before a jury, which returned a verdict finding him guilty of the crime of manslaughter. Thereafter, the trial court pronounced judgment whereby it was ordered that he be confined in the state prison as punishment for the offense of which he was convicted. From the judgment thus rendered defendant presents this appeal.

Appellant advances two contentions in his effort to secure a reversal of the judgment. The first of these is that he was deprived of his right to a fair trial by misconduct of the district attorney in certain particulars which will hereafter be enumerated and considered. The second contention is that

the trial court erroneously refused to give to the jury certain instructions which he offered.

The misconduct of which appellant complains consists of various specified statements made by the prosecuting officer during his closing address to the jury. The first of such statements is in the following language:

"And so you have the spectacle of counsel using every trick, every artifice, every endeavor that they can that zeal or genuis can discover, in order to befuddle the issue in this case and free their client; and I do not say that in criticism of either of these two capable lawyers, because as this jury knows, it has been more or less the custom in this country, particularly in the years since the turn of the twentieth century, to sanction such endeavors on the part of criminal attorneys to free those accused of crime. You read of it every day in the papers, you see it every day in the jury room, and the same attorneys that will use these tricks, these artifices, will come into my office and pass the time of day and have a smoke with me and then laugh and tell me how they put it over on the District Attorney or on the jury."

On its face, and standing alone, the above-quoted language is intemperate and clearly objectionable. It may not, however, be properly lifted from the text of the prosecutor's address and subjected to criticism without reference to the surrounding context. When that portion of the address in which the criticized language occurs is examined it becomes apparent that the speaker was replying to a charge or an insinuation made by appellant's counsel in their arguments to the jury that the district attorney, during the course of the trial, had sought to procure a change in the testimony of a certain witness called by the prosecution because the testimony as originally given did not fit with certain documentary evidence consisting of a written report by a ballistic expert, which evidence was likewise submitted by the prosecution. The transcript on appeal, although it apparently contains the full text of the addresses made to the jury by counsel representing the respondent, contains no part of the arguments which were addressed to the jury by appellant's counsel. Under these circumstances a reviewing court is unable intelligently to appraise the effect of the criticized remarks and to declare that the language amounts to such prejudicial mis-

conduct as to demand reversal of the judgment. (*People* v. *Bragdon,* 103 Cal. App. 20 [283 Pac. 881] ; *People* v. *James,* 133 Cal. App. 751 [24 Pac. (2d) 859] ; *People* v. *Lawyer,* 1 Cal. App. (2d) 1 [35 Pac. (2d) 1036] ; *People* v. *Gregory,* 12 Cal. App. (2d) 7 [54 Pac. (2d) 770] ; *People* v. *Mareck,* 17 Cal. App. (2d) 278 [61 Pac. (2d) 972].) If appellant's counsel desired that the criticized language should receive the full consideration and fair appraisal of a reviewing court they should have complied with the provisions of section 7 of rule II of the rules of this court. Furthermore, it may be remarked that when appellant's counsel took exception to the criticized language and assigned it as misconduct, the trial court of his own volition admonished the jury to disregard anything that was not evidence in the case. We are entitled to assume that the jury obeyed the admonition and gave no heed to the remarks which obviously were not evidence and had no conceivable bearing upon the issue of appellant's guilt or innocence.

The second specification of misconduct consists of the following language: "But never at any time, while I have held the office of District Attorney have I ever tried to convict anybody of a crime unless I thought they were guilty of the crime. I have not convicted everybody I tried to convict, but I never did convict anybody that was not guilty and I never prosecuted anybody that I did not think was guilty." Complaint is also registered that at another place the prosecutor called attention to the fact that appellant was held for trial after preliminary examination before a magistrate. It is further observed that in another part of his address the district attorney stated that he believed it was his duty not to prosecute if he did not feel that the facts warranted prosecution and a verdict of conviction and that, on the other hand, if he believed the evidence warranted prosecution he conceived that it was his duty to prosecute. Finally, complaint is made of the following language: "Still I think it is a fair and logical argument to tell you that my judgment tells me that the evidence in this case warrants a verdict of guilty."

The various specifications above noted are here grouped together because in each of them except one the district attorney expressed the thought that he believed that appellant

was guilty of the offense of which he was accused. The language last quoted in the preceding paragraph is not objectionable for the reason that the speaker told the jury that, in his judgment, the evidence produced during the trial warranted a verdict of conviction. It is settled that a prosecutor in a criminal action has the right to state his views, his beliefs, his conviction as to what the evidence establishes. (*People* v. *Romero,* 143 Cal. 458, 460 [77 Pac. 163] ; *People* v. *Weber,* 149 Cal. 325 [86 Pac. 671] ; *People* v. *Kelly,* 69 Cal. App. 558 [231 Pac. 767].)

 The single statement included in the above-mentioned group which does not contain a suggestion of the prosecutor's belief in the guilt of the accused is that wherein he referred to the fact that it had been determined at a preliminary examination that there was sufficient cause to hold the appellant for trial. It is a sufficient answer to the complaint which is now voiced to this reference to point to the fact that at the time the statement was made no objection was made to it and it stood unchallenged, without any assignment of misconduct or complaint of any character. It was appellant's duty, if he thought the reference was improper, to make known his objection to it at the time. Having failed to do so, it is too late to raise the objection for the first time on appeal. (*People* v. *Tedesco,* 1 Cal. (2d) 211 [34 Pac. (2d) 467].) Furthermore, no argument is presented and no authority cited in support of the objection. It is evident from the context surrounding the remark that the prosecutor was making brief and casual reference to the preliminary steps that had been taken in the case preceding the trial of the action. We find no merit in appellant's tardy assignment of misconduct.

 With reference to the remaining statements included in the group now under consideration in which the prosecutor referred to the fact that he had never prosecuted or attempted to convict anyone of a crime unless he thought such person was guilty and that he conceived that it was his duty to prosecute if he believed that the evidence warranted such action, it must be conceded that these remarks were improper and should not have been made. As was correctly stated in *People* v. *Podwys,* 6 Cal. App. (2d) 71, 74, [44 Pac. (2d) 377] ; "There can be no excuse for such comment." To the

same effect is the text of the decision in *People* v. *Edgar,* 34 Cal. App. 459, 469 [167 Pac. 891]. However, with respect to these statements, it must be observed that counsel for appellant did not request the trial court to admonish the jury to disregard them but as to each one rested content with an assignment of misconduct and the reservation of an exception thereto. It was the duty of counsel to have requested an admonition to the jury and we may not assume that the trial court would have refused a request to advise the jury that such remarks had no proper place in the prosecutor's argument and should be entirely disregarded. The objectionable remarks were most general in character and it is our opinion that their effect could easily have been obviated by an instruction to disregard them. In such a situation complaint that the error demands reversal of the judgment is not entitled to favorable consideration on appeal. (*People* v. *Nakis,* 184 Cal. 105, 116 [193 Pac. 92] ; *People* v. *West,* 215 Cal. 87, 96 [8 Pac. (2d) 463] ; *People* v. *Dykes,* 107 Cal. App. 107 [290 Pac. 102].)

Another specification of prejudicial misconduct is noted in the following language, which occurs in the address of the district attorney: "And I say to this jury right now that what Marjorie said about the attempt to give her a ranch in Montana if she would change her story, was in my judgment true, *and I will tell the jury right now, that I knew all about it then. I knew the offer had been made. I knew it before I ever saw Marjorie Chilcott."* That part of the quoted statement which is here italicized is the language which it is claimed constituted misconduct. It must be conceded that it was highly improper and that the declaration violated a fundamental rule applicable to the conduct of the trial of a criminal action. By it the prosecutor plainly told the jury that he knew that the offer to which reference was made had in fact been submitted. The district attorney in effect gave testimony in the guise of argument. Such action on the part of the prosecuting official may not easily be excused and is deserving of censure. However, in this instance appellant's counsel not only assigned the criticized language as misconduct but requested the court to admonish the jury to disregard it, a request which the court immediately granted. The district attorney evidently appreciated the impropriety of his action as the record shows that, after the court had

admonished the jury to disregard the statement, he himself proceeded to ask the jury to disregard any statement contained in his argument unless it should be supported by sworn testimony introduced during the trial and expressed a desire not to testify himself or to place before the jury facts that did not appear in evidence. Appellant maintains that despite the trial court's prompt admonition and the prosecutor's ready acknowledgment of the impropriety of his action the misconduct thus committed was so grave and so prejudicial that a reversal of the judgment is demanded. This argument merits consideration.

In seeking to give proper appraisal to the effect of the prosecutor's misconduct, it may first be inquired just what it was to which the counsel for respondent referred when he said that he knew the offer had been made, that he knew it before he ever saw Marjorie Chilcott. Examination of the record shows that the most damaging testimony against appellant was given by his sister, Marjorie Chilcott, who was the principal witness for the prosecution and that Dr. W. L. Chilcott and Mrs. Mabel B. Chilcott, the father and mother respectively of appellant, and Marjorie Chilcott testified on behalf of appellant. It appears that the first inquiry regarding a supposed offer to turn over a ranch in Montana to Marjorie Chilcott was directed to Dr. W. L. Chilcott on his cross-examination as a witness for appellant. Objections by appellant to questions relating to this matter were overruled and the trial court then expressly admonished the jury that the evidence sought to be elicited was admissible only for the purpose of showing the interest and bias of the witness, that it was limited to that purpose, and could not be considered as tending to show that appellant was guilty of the crime of which he was accused. A similar question was propounded to Mabel B. Chilcott during her cross-examination while she was testifying as a witness on behalf of appellant. Objection by appellant to the question was overruled and the jury was again instructed that the evidence sought to be adduced was admissible only to show bias or interest on the part of the witness and could not be considered as tending to prove appellant's guilt of the crime charged against him. It may be remarked that this witness testified that she told her husband, Dr. Chilcott, to inform Marjorie Chilcott that the

mother would give the daughter a half interest in a Montana ranch if the latter would tell the truth regarding the affray which resulted in the death of the man whom it was charged appellant had murdered. It may be further observed that Marjorie Chilcott, called by respondent as a rebuttal witness, testified that her father, Dr. Chilcott, told her that her mother would turn over to her a ranch in Montana if Marjorie would change her testimony.

From the above analysis of the evidence it is apparent that the offer which the district attorney improperly stated he knew had been made to Marjorie Chilcott did not relate to the issue of appellant's guilt or innocence. It had to do only with the purely incidental and collateral matter of the interest in the outcome of the case displayed by two witnesses who testified in appellant's favor. In our opinion, the effect of this misconduct of which the prosecutor was guilty was not so serious or prejudicial as to demand reversal of the judgment, particularly as the jury was so promptly admonished by the court to disregard the remarks.

A further impropriety charged against the district attorney consists of the following quotation from the prosecutor's closing address to the jury: "And now they tell you that they are ashamed to bring in this and they are happy to remain skulking behind the pictures and up to the Y. W. C. A. to find out if they could bring in something bad about her."

The worst criticism that may fairly be made of the above-quoted rather ambiguous utterance is that it was intemperate and had no proper place in the prosecutor's argument. In any event, appellant's counsel were content to assign it as misconduct without requesting the trial court to instruct the jury to disregard the statement. For reasons heretofore stated and on the authority of *People* v. *Nakis, supra, People* v. *West, supra,* and *People* v. *Dykes, supra,* we do not feel called upon to give more serious consideration to appellant's complaint of prejudicial misconduct so far as this particular statement is concerned.

Appellant's final contention is that the trial court erroneously refused to give to the jury certain specified instructions offered and requested by him. It is significant that appellant's complaint in this regard is accompanied by the con-

cession "that on the whole, the instructions given by the court were fairly comprehensive, and in any ordinary case, might be deemed sufficient". Examination of all the instructions given by the trial court in their entirety impels the conclusion that the jury was fully, fairly, and correctly advised by the court and that no error was committed by the refusal to give the additional instructions requested by appellant which are set forth in his opening brief on this appeal.

Finally, with respect to appellant's reiterated complaint that the misconduct of the district attorney and the claimed errors of the trial court in refusing to give the proffered instructions were highly prejudicial to him because of the "closeness of the issues" we are constrained to state that careful study of the entire record on appeal has produced the settled conviction that the all-important issue of appellant's guilt or innocence is not close. The accused was accorded a fair trial and, in our opinion, the jury exhibited extreme clemency in reducing his offense to manslaughter.

The judgment and order denying appellant's motion for a new trial are affirmed.

Barnard, P. J., and Marks, J., concurred.